679 So.2d 1219 (1996)
James D. CRAIG and Jeanne Craig, as individuals, husband and wife, and as the natural parents, guardians, and as next best friend of Jamie Craig, their minor child, Appellants,
v.
The SCHOOL BOARD OF BROWARD COUNTY, Florida, Appellee.
No. 95-0650.
District Court of Appeal of Florida, Fourth District.
August 28, 1996.
Motions for Rehearing, Certification and Correction Denied October 15, 1996.
*1220 Alan D. Sackrin, Hollywood, and Michael B. Nipon, Fort Lauderdale, for appellants.
*1221 E. Bruce Johnson and Christine M. Duignan of Johnson, Anselmo, Murdoch, Burke & George, Fort Lauderdale, for appellee.
GROSS, Judge.
Appellants appeal a final judgment arising from a jury verdict finding no negligence on the part of the School Board of Broward County. We reverse because the trial court failed to give two requested jury instructions which were necessary for the jury to properly resolve the issues in the case.
In January, 1990, eight-year old Jamie Craig and his nineteen-year old sister were riding their aunt's adult tricycles on the sidewalk adjacent to Stirling Road. Stirling Road is a six lane street in a commercial area with a posted speed limit of 45 miles per hour. Jamie lost control of the tricycle and turned into the road 160 feet from the intersection.
The driver of a van who had just turned into the right lane of Stirling Road observed the tricycles on the sidewalk. Before turning, he noticed a bus approaching in the distance in the right lane of Stirling. The van driver saw Jamie lose control of the tricycle and veer into the street. He was able to stop two and a half car lengths in front of Jamie. Looking in his rear view mirror, the van driver saw the bus approaching in the center lane. Jamie slowly crossed the right lane toward the center of the street. When Jamie was about halfway across the middle lane, appellee's school bus hit him.
The bus driver testified that she did not see Jamie riding the bike. Not knowing why the van was stopped, the bus driver changed from the curb to the center lane. Although she believed that she was travelling between 35 and 40 miles per hour, there was conflicting testimony in the record as to speed. One expert estimated the bus' speed to be 50 to 56 miles per hour just before impact. School Board policy allowed buses to drive a maximum of 5 miles below the speed limit, not to exceed 40 miles per hour. The bus driver stated that she never saw Jamie prior to impact; she did not know what she hit until she got out of the bus.
The major points on appeal concern the propriety of the charge to the jury. A party is entitled to have the trial court instruct the jury on his theory of the case when the evidence, even though controverted, supports the theory. L.K. v. Water's Edge Ass'n., 532 So.2d 1097, 1098 (Fla. 3d DCA 1988); Mathieu v. Schnitzer, 559 So.2d 1244, 1245-46 (Fla. 4th DCA), rev. dismissed, 570 So.2d 1306 (Fla.1990); see Seaboard Coastline R.R. Co. v. Addison, 502 So.2d 1241, 1242 (Fla.1987) (violation of traffic ordinance is evidence of negligence, and when there is evidence of such violation, requesting party is entitled to have jury so instructed); Ridley v. Safety Kleen Corp., 21 Fla. L. Weekly S232, ___ So.2d ___ [1996 WL 295106] (Fla. May 30, 1996). Failure to give a requested jury instruction constitutes reversible error where (1) the requested instruction accurately states the law, (2) the facts in the case support the giving of the instruction, and (3) the instruction was necessary to allow the jury to properly resolve the issues in the case. Davis v. Charter Mortgage Co., 385 So.2d 1173, 1174 (Fla. 4th DCA 1980); Sotuyo v. Williams, 587 So.2d 612, 614 (Fla. 1st DCA 1991).
Appellants first argue that the trial court erred in failing to give Florida Standard Jury Instruction (Civil) 4.12:
A motorist must exercise reasonable care to guard against the unpredictable and erratic behavior of children on or near the [street][highway] if he knows or should know of their presence.
The instruction reflects the Florida law that drivers of motor vehicles are held to a higher degree of care when they have reason to believe that young children may be present. As the supreme court wrote in 1952,
The general rule ... is that one manipulating a motor vehicle on the highway, whether backing, starting, or proceeding ahead, must exercise reasonable care, circumstances being the guide as to what constitutes reasonable care. If he has reason to think that children may be near, reasonable caution requires that he be on the lookout for them.

Miami Paper Co. v. Johnston, 58 So.2d 869, 871 (Fla.1952)(emphasis supplied).
*1222 Application of the charge is not limited, as appellee argues, to geographic areas such as school zones or recreational parks frequented by children. The obligation to exercise a higher degree of care arises when a motorist "should know" of the presence of children. Of course, the obligation to be on the lookout for children arises in locations where children typically play or gather. See, e.g., id. at 870; Spackman v. Laumer, 237 So.2d 35, 37 (Fla. 1st DCA 1970). The same legal duty is also imposed upon a driver when children are in fact present and a reasonably prudent driver would see them. See Budgen v. Brady, 103 So.2d 672, 675 (Fla. 1st DCA), cert. denied, 105 So.2d 793 (Fla.1958). The presence of children is in itself a warning requiring the exercise of care for their protection. See Riley v. Willis, 585 So.2d 1024, 1026 (Fla. 5th DCA 1991). A lesser standard of care should not be applied to a driver who did not see what a reasonable person should have seen.
The note on the use of the instruction indicates that the charge is designed for use "in cases involving a younger child when the child is observed or is at a place where children may reasonably be expected." Fla. Std. Jury Instr. (Civ.) 4.12 n. 1. This reference should not be read to weaken the legal standard contained in the charge. Where, as here, a child is observed by someone in a position similar to that of a defendant, such a sighting is evidence that the defendant failed to conform to even that basic standard of care which would have made him aware of the presence of children.
Appellants next argue that the trial court erred in refusing to instruct the jury on section 316.183(2) & (3), Florida Statutes (Supp.1990), in conjunction with Florida Standard Jury Instruction (Civil) 4.11.[1] Section 316.183(2) & (3) provided:
316.183 Unlawful speed.
(2) On all streets or highways, the maximum speed limits for all vehicles shall be 30 miles per hour in business or residence districts, and 55 miles per hour at any time at all other locations.
(3) No school bus shall exceed the maximum speed limits provided in subsection (2).
The school board contends that section 316.189, Florida Statutes (Supp.1990), allowed counties and municipalities to override the general speed limits of section 316.183 and that the posted speed limit on Stirling Road was 45 miles per hour. Appellants counter that section 316.183(3) established a maximum speed limit of 30 miles per hour for a school bus in a business or residential district.
We hold that the statute in force at the time of the accident established a speed limit unique to school buses. To gauge the statutory purpose behind section 316.183(3), it is proper to trace the evolution of the legislature's regulation of the speed of school buses. See Vildibill v. Johnson, 492 So.2d 1047, 1049 (Fla.1986); 49 Fla. Jur.2d Statutes § 171 (1984). The 1990 version of section 316.183(3) was in place from 1976 to 1994. Prior to the 1976 amendment, the statute read,
No school bus shall exceed the maximum speed limit of fifty-five (55) miles per hour on highways which form a part of the national interstate system or on any expressway or limited access four-lane road or when involved in intercounty travel on highways outside of municipalities with respect to extracurricular activities authorized by the school board, forty (40) miles per hour on highways outside of municipalities which are not a part of the national system of interstate highways, or twenty-five (25) miles per hour in any business or residential district.
Ch. 71-135, § 1, at 496, Laws of Fla. (emphasis supplied). This version of the statute required school buses to abide by certain speed limits on "highways outside of municipalities," indicating that municipalities could control speed limits on highways within city limits. However, for "any" business or residential *1223 districts, the statute set a specific speed limit without using the prepositional phrase "outside of municipalities." This language evinces a legislative intent to establish a statewide speed limit for school buses not subject to local control.
The 1976 amendment preserved a special statewide speed limit for school buses. After the general description of a speed limit applicable to "all vehicles" in subsection (2), section 316.183(3) isolates school buses from all other types of vehicles and declares that the maximum speeds in the preceding paragraph not be exceeded. In construing statutes, a court must give effect to all parts of a statute. Kepner v. State, 577 So.2d 576, 578 (Fla.1991). Where there is in the same statute a specific provision, and also a general one that in its most comprehensive sense would include matters embraced in the former, the particular provision will nonetheless prevail. Fletcher v. Fletcher, 573 So.2d 941, 942 (Fla. 1st DCA 1991). Section 316.183(3), Florida Statutes (Supp.1990), applies a special rule to school buses, requiring them to abide by a 30 mile per hour speed limit in business and residential districts, regardless of posted signs.[2] Any other construction would give no effect at all to subsection (3). There would be no reason to create a separate subsection of the statute for school buses if they were treated the same as all other vehicles, which were entitled to rely on posted speed signs. Cf. Brown v. Felts, 224 So.2d 332 (Fla. 1st DCA), cert. denied, 232 So.2d 176 (Fla.1969) (case not involving school buses, where court held that "statute fixing speed limits for business and residential areas is clearly a catchall provision operative only in the absence of posted speed signs"). This interpretation is consistent with the policy behind the statute, which sought to lessen the likelihood of an accident involving children in areas with the greatest vehicular traffic.
Both requested instructions were supported by the facts at trial. Each accurately sets forth the law. There was evidence from which the jury might have concluded that the bus driver should have seen Jamie and taken precautions for his safety.[3] The jury should have been instructed on the higher standard of care applicable to the situation. Without standard instruction 4.12, the jury was unaware of the legal standard governing a motorist's duty towards children. The absence of the charge based on section 316.183(3) deprived appellant of some evidence of negligence, where the bus driver admitted exceeding 30 miles per hour, but claimed to be going slower than the posted speed limit. Not knowing that any statutory violation existed, the jury was prevented from assessing its legal effect. For these reasons, the failure to give the requested instructions entitles appellants to a new trial.
As to the remaining points on appeal, we affirm. The failure to give the instruction on the School Board's internal rule of driving conduct was harmless error from appellants' standpoint. The cautionary instruction was designed to protect the School Board from the imposition of a higher standard than the law required. The instruction based on section 316.125(1), Florida Statutes (1989), was properly given. The tricycle was a "bicycle" within the meaning of section 316.003(2), Florida Statutes (1989). A bicycle is a "vehicle" under Chapter 316. § 316.003(2), (75), Fla. Stat. (1989). A bicyclist generally has all the same rights and duties under the chapter that are applicable to the driver of any other vehicle. § 316.2065(1), Fla. Stat. (1989). The instruction based on section 316.130(8), Florida Statutes (1989), should not have been given *1224 because Jamie was not a "pedestrian," defined as "[a]ny person afoot," at the time of the accident. § 316.003(28), Fla. Stat. (1989). Finally, there was no error in the refusal to grant a directed verdict.
REVERSED AND REMANDED.
GLICKSTEIN and STONE, JJ., concur.
NOTES
[1] Standard Jury Instruction (Civil) 4.11 provides:

Violation of this [statute] [ordinance] is evidence of negligence. If you find that a person alleged to have been negligent violated such a traffic regulation, you may consider that fact, together with the other facts and circumstances, in determining whether such person was negligent.
[2] We note that in 1994 the legislature effected a substantial change by amending the statute to read, "No school bus shall exceed the posted speed limits, not to exceed 55 miles per hour at any time." Ch. 94-306, § 17, at 2104-05, Laws of Fla. (codified at § 316.183(3), Fla. Stat. (Supp. 1994)). Such a significant amendment reflects the legislative intent that the new statute have a meaning different from that accorded to it before the change. See Causeway Lumber Co., Inc. v. Lewis, 410 So.2d 511, 512 (Fla. 4th DCA 1981); Mangold v. Rainforest Golf Sports Ctr., 675 So.2d 639 (Fla. 1st DCA 1996).
[3] For example, a driver in a car behind the school bus was able to see the child on the tricycle in the middle of the right hand lane of Stirling Road, even though he had a lower vantage point than the bus driver. As previously noted, the van driver came to a complete stop several car lengths in front of the child.